UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————— X

THE NEW YORK TIMES COMPANY,                    :

                      Plaintiff,                    :

                      v.                    :              **COMPLAINT**

DEPARTMENT OF HEALTH AND HUMAN         :
SERVICES and CENTERS FOR DISEASE CONTROL
AND PREVENTION,                    :

                    Defendants.                    :

———————————————————————————— X

Plaintiff The New York Times Company ("The Times"), by and through its undersigned attorneys, alleges as follows:

## INTRODUCTION

1.    This lawsuit challenges the constructive denial of an April 14, 2020 request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, submitted by plaintiff The Times to defendants the Department of Health and Human Services ("HHS") and the Centers for Disease Control and Prevention ("CDC").

2.    As of May 13, 2020, there have been over 1.3 million cases of COVID-19 in the United States— 82,355 of which have resulted in death. Testing shortages and delayed results have led to an increased sense of uncertainty about COVID-19's pervasiveness, leaving some communities in the dark about the disease's true threat and the preventative steps that should be taken.

3.    Though demographic information is limited, early data shows that COVID-19 may disproportionately affect African-Americans and those living in low-income and minority communities. This disproportionality is likely the consequence of certain community characteristics,

such as limited access to healthcare, a higher prevalence of underlying medical conditions that increase the risk of COVID-19, and a significant number of citizens who are "front line" workers.

4.     To understand more about the disproportionate impact of the disease, The Times is seeking a broad range of data about the positive COVID-19 cases. Only by seeing the overall demographic picture can the public properly assess the devastation done by the disease in particular communities and localities.

5.     The public relies on the CDC's prompt disclosure of information so that it can better understand the risks of COVID-19. Yet the CDC has refused to turn over important information about how this pandemic is impacting low-income and minority communities until late October 2020. This information is of the utmost importance to those communities, whose citizens are seemingly more vulnerable to the disease. With this substantial delay in release of the data that the CDC has already collected, the public will "not be able to accurately identify the threat among the most vulnerable populations nor find solutions to address associated health inequities."

6.     The Times has requested copies of All Human Infection with 2019 Novel Coronavirus Person Under Investigation (PUI) and Case Report Forms submitted to HHS or any of its components, including the CDC. These records provide demographic data that will significantly contribute to the public understanding of COVID-19 and will shed light on agency data collection methods as part of the government's response to the pandemic. The Times has been actively covering the pandemic in general as well as its impact on minority communities. It wishes to continue doing so by using the requested information to inform the public about the relationship between certain demographic traits or pre-existing conditions and COVID-19 cases, treatments, and outcomes.

**PARTIES**

7.     Plaintiff The New York Times Company publishes The New York Times newspaper and www.nytimes.com. The New York Times Company is headquartered in this judicial district at 620 Eighth Avenue, New York, New York, 10018. The New York Times reports on various aspects of the COVID-19 outbreak to millions of readers every day.

8.     Defendant the Department of Health and Human Services is an agency within the Executive Branch of the United States government. HHS is responsible for managing a wide variety of health and welfare programs, both directly and through its components.

9.     Defendant the Centers for Disease Control and Prevention is an agency within the HHS. The CDC is responsible for responding to domestic health threats through research, control, and prevention. In carrying out this responsibility, the CDC also complies statistics and data about ongoing health threats. The CDC has confirmed it has possession and control of the records that Plaintiff seeks.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction over this action and personal jurisdiction over the defendants pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–06.

11.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

12.     Plaintiff has exhausted all administrative remedies available in regard to the request at issue. *See* 5 U.S.C. § 552(a)(6)(C).

## FACTS

### The COVID-19 Outbreak

13.     Since the first case of COVID-19 in the United States was identified in January 2020, over 1.3 million Americans have contracted the novel coronavirus that causes COVID-19, and over 82,000 Americans have died from the disease. Worldwide, there are over 4.2 million cases and over

290,000 deaths. Due to testing shortages and delayed results, the true impact of the disease in affected communities is unclear.

14.     Low-income and minority communities have been at the core of the United States' coronavirus outbreak. This stems from a combination of limited access to healthcare resources, higher prevalence of underlying health conditions that heighten the risks of COVID-19, and a significant concentration of these communities having "front line" and "essential" workers. In a letter to the HHS, the Congressional Black Caucus stated that there are serious risk factors for these communities, because people are "less likely to have the ability to work from home . . . adding to their risk."

15.     Early data about hospitalizations and deaths has shown that COVID-19 might disproportionately affect African-Americans. In the Congressional Black Caucus' letter to the HHS, it noted that while everyone is at risk of contracting COVID-19, structural racism, income inequality, and limited resources make communities of color particularly vulnerable to COVID-19.

16.     Many news outlets have featured stories about how COVID-19 has impacted communities of color: including *The New York Times*, *The Hill*, *ProPublica*, and *The Atlantic*. A search of the Lexis Nexis database on April 27, 2020 identified 2,338 stories published on COVID-19 and racial disparities in the month of April alone.

17.     Despite these attempts to cover the story, currently there is not robust and transparent demographic data on how COVID-19 has impacted communities of color. Therefore, these communities and their representatives have not been able to address potential risks and inequities in healthcare treatment.

18.     Disclosure of demographic data on COVID-19 cases, treatments, and outcomes will increase public understanding of the COVID-19 pandemic itself. In particular, the data on morbidity and mortality among minority communities will allow these communities to better understand their own

individual risks. It will also allow the public to assess whether healthcare providers are administering COVID-19 treatment equitably. If the data reveals inequities in cases, treatments, or outcomes, the public will be able to use this data to advocate for change and to work with public health officials to address these inequities.

### Defendants Fail to Respond to The New York Times' FOIA Request

19.     On April 14, 2020, The Times submitted a FOIA request requesting expedited processing to the defendants requesting all Human Infection with 2019 Novel Coronavirus PUI and COVID-19 Case Report Forms submitted to HHS or any of its components, including the CDC, at any point through the date of the search. A true and correct copy of the FOIA (with the Case Report Form appended) is attached as Exhibit A.

20.     That same day, HHS acknowledged the request. The very next day it informed The Times that the CDC is the "HHS Operating Division" that is "responsible for information collection of the Person Under Investigation (PUI) and Case Report Forms." It then informed The Times that it would close the request, but that if the "CDC locate[s] records that originated with HHS officials, or has any indications that HHS officials may have records responsive, [the] CDC w[ould] refer [the] request to [HHS] for further action."

21.     On April 21, 2020, the CDC itself replied to The Times's request. The CDC granted the request for expedited processing, stating that the request met the statutory criteria as set forth in FOIA. Nevertheless, the reply stated that due to the volume of information requested, the CDC "reasonably anticipated" that processing would be complete by October 18, 2020. A true and correct copy of the CDC reply is attached as Exhibit C.

22.     After the CDC responded, that same day counsel for The Times called the CDC FOIA officer assigned to the request. The FOIA officer said that the CDC needed time to investigate the information in its possession because different jurisdictions send the CDC the underlying forms

periodically and to determine how the underlying data in the requested forms was organized. The FOIA officer responded that she would need to contact her colleagues to answer these questions to determine if information could be provided to The Times on a rolling basis. The CDC FOIA officer indicated that part of her investigation would be to determine if the information was in only in paper form—which would require scanning and redacting all personally-identifiable information—or if the information was organized in a database, in which case certain fields could be omitted. The FOIA officer indicated she expected to have more information soon.

23.     On April 29, 2020, counsel for The Times called the CDC FOIA officer again to follow up. Counsel for The Times learned that, to the best of the FOIA officer's knowledge, the requested information from the underlying forms was being entered into an electronic database. The officer did not clarify if rolling production would be available, or when The Times would begin to receive information.

24.     On May 4, 2020, counsel for The Times wrote the CDC a follow-up email regarding the status of the FOIA request.

25.     On May 6, 2020, counsel for The Times received an email from the CDC stating it "at this point, [the CDC] [had] no additional information" and that "[p]rogram staff are continuing their efforts to assemble all data from the PUI forms."

26.     On May 7, 2020, counsel for The Times received a voice mail message from the CDC stating that the CDC planned to send a final response letter "today or tomorrow."

27.     The Times has had no further contact with the CDC.

## COUNT ONE

28.     Plaintiff repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

29.     Defendants HHS and CDC are subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any materials as to which they is claiming an exemption.

30.     Defendants have failed to meet the statutory deadlines set by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)-(E). Accordingly, Plaintiff is deemed to have exhausted its administrative remedies under FOIA.

31.     Defendants have no lawful basis for declining to release the records requested by Plaintiff under FOIA.

32.     Accordingly, Plaintiff is entitled to an order compelling Defendants to produce records responsive to its FOIA request and on a rolling production schedule.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

33.      Declare that the documents sought by its FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

34.     Order Defendants to provide the requested documents to Plaintiff within 20 business days of the Court's order;

35.     Award Plaintiff the costs of this proceeding, including reasonable attorney's fees, as expressly permitted by FOIA; and

36.     Grant Plaintiff such other and further relief as this Court deems just and proper.

    Dated:  May 13, 2020
            New York, NY

Respectfully submitted,


Cortelyou C. Kenney                          /s/David E. McCraw
Mark H. Jackson                              David E. McCraw
Cornell Law School                           Alexandra Perloff-Giles
First Amendment Clinic                       Legal Department
G33 Hughes Hall                              The New York Times Company
Ithaca, New York 14853                       620 8th Avenue
Tel: (607) 255-8897                          New York, NY 10018
cck93@cornell.edu                            Phone: (212) 556-4031
                                             Fax: (212) 556-4634
                                             E-mail: mccraw@nytimes.com


CORNELL LAW SCHOOL
FIRST AMENDMENT CLINIC[1]
                                                        *Counsel for the Plaintiff*

---

[1] This complaint has been partially prepared by the Cornell Law School First Amendment
Clinic, a program housed within Cornell Law School and Cornell University. Nothing in this
complaint should be construed to represent the views of these institutions, if any.

# Exhibit A



The New York Times
Company

Alexandra Perloff-Giles
Legal Department

T 212 556 7783

aperloffgiles@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

Department of Health and Human Services
Hubert H. Humphrey Building, Room 729H
200 Independence Avenue, S.W.
Washington, D.C. 20201
FOIARequest@hhs.gov

Centers for Disease Control and Prevention
1600 Clifton Road, N.E.
Building 57, Room MS D-54
Atlanta, GA 30333
FOIARequests@cdc.gov

CMS FOIA Officer
Centers for Medicare & Medicaid Services
Mailstop N2-20-16
7500 Security Boulevard
Baltimore, MD 21244
FOIA_Request@cms.hhs.gov

April 14, 2020

## RE:   EXPEDITED   FREEDOM   OF   INFORMATION   ACT REQUEST

To Whom It May Concern:

This is an expedited request by The New York Times ("The Times") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for access to data related to COVID-19 testing, disease burden, treatment, and patient outcomes. This request—specified below—seeks records held by the Department of Health and Human Services ("HHS") and its components, the Centers for Disease Control and Prevention ("CDC"), and the Centers for Medicare & Medicaid Services ("CMS").

Since the first case of COVID-19 in the United States was identified in January, roughly 600,000 Americans have tested positive for the novel coronavirus that causes COVID-19, and over 25,000 Americans

have died from the disease.[1] As the virus has spread, testing shortages and delayed results have contributed to uncertainty about the true prevalence of the disease in affected communities around the country.[2]

This uncertainty is particularly acute in low-income and minority communities, where a combination of limited access to healthcare resources, a higher prevalence of underlying health conditions that heighten the risks of COVID-19, and a significant concentration of "front line" workers has put these communities at the core of the United States' coronavirus outbreak.[3] Demographic data on COVID-19 cases and outcomes is limited, with only a small number of state and local health departments releasing such information.[4] However, early data on hospitalizations and deaths has shown that African-Americans might be disproportionately affected by COVID-19.[5] In a recent letter to HHS, the Congressional Black Caucus noted that "[a]lthough everyone is at risk, the history of structural racism, income inequality, and lack of resources in communities of color make these communities especially vulnerable to COVID-19."[6]

---

[1] *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. Times, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited April 14, 2020).

[2] Sheila Kaplan & Katie Thomas, *Despite Promises, Testing Delays Leave Americans 'Flying Blind'*, N.Y. Times (Apr. 6, 2020), https://www.nytimes.com/2020/04/06/health/coronavirus-testing-us.html.

[3] Jeffery C. Mays & Andy Newman, *Virus is Twice as Deadly for Black and Latino People Than Whites in N.Y.C.*, N.Y. Times (Apr. 8, 2020), https://www.nytimes.com/2020/04/08/nyregion/coronavirus-race-deaths.html.

[4] Akilah Johnson & Talia Buford, *Early Data Shows African Americans Have Contracted and Died of Coronavirus at an Alarming Rate*, ProPublica (Apr. 3, 2020, 1:21 PM), https://www.propublica.org/article/early-data-shows-african-americans-have-contracted-and-died-of-coronavirus-at-an-alarming-rate.

[5] *Id.*; David Waldstein, *C.D.C. Releases Early Demographic Snapshot of Worst Coronavirus Cases*, N.Y. Times (Apr. 10, 2020), https://www.nytimes.com/2020/04/08/health/coronavirus-cdc-demographic-study-hospitalizations.html; Ibram X. Kendi, *Why Don't We Know Who the Coronavirus Victims Are?*, The Atlantic (Apr. 1., 2020), https://www.theatlantic.com/ideas/archive/2020/04/stop-looking-away-race-covid-19-victims/609250.

[6] J. Edward Moreno, *Congressional Black Caucus Calls on CDC to Report Racial Data*, The Hill (Apr. 06, 2020, 5:06 PM),

The piecemeal approach to demographic data taken thus far will be insufficient to address this inequity. A lack of publicly available national demographic data will continue to hamper efforts to develop a robust public health response in low-income and minority communities that might be particularly vulnerable to COVID-19.[7] Accurate and transparent national demographic data, on the other hand, will allow public health officials to develop policies and programs that will save lives in these communities, while also allowing to public to ensure that healthcare providers are administering COVID-19 treatment equitably across, for example, racial and ethnic lines.

**Document Request**

The Times seeks copies of the following records:

**All Human Infection with 2019 Novel Coronavirus Person Under Investigation (PUI) and Case Report Forms ("COVID-19 Case Report Forms") submitted to HHS or any of its components at any point through the date of the search.**

A blank form is attached as Exhibit A.

We request that all of these records be produced in their native electronic formats with any attached metadata included, so long as such electronic files can be opened using standard commercially available software. If the files cannot be produced in this manner, we request that records be produced in an alternative electronic format that is text-searchable. With respect to databases, spreadsheets or similar organized sets of data, we request that the records be produced in .xls or .csv format. 5 U.S.C. § 552(a)(3)(B).

**Fee Waiver Request**

A waiver of search and review fees is appropriate here because disclosure of the requested information is in the public interest under 5

---

http://thehill.com/homenews/house/491864-cbc-calls-on-cdc-to-report-racial-data.

[7] Kendi, *supra* note 5.

U.S.C. § 552(a)(4)(A)(iii) and 45 C.F.R. § 5.54(a), (b)(1)-(2), and because the request is not primarily in The Times's commercial interest, 45 C.F.R. §§ 5.45(a), (b)(3)(ii).

*Disclosure Is in the Public Interest*

Disclosure of the requested information is likely to contribute significantly to the public understanding of the ongoing COVID-19 pandemic and HHS's response to it. 45 C.F.R. § 5.54(b)(1). In particular, the requested information will shed light on HHS's data collection as part of its pandemic response, information which is not "already in the public domain." 45 C.F.R. § 5.54(b)(2)(i). As a news media organization that has published several stories about the COVID-19 pandemic in general and its impact on minority communities or certain geographic regions in particular,[8] we have demonstrated our "ability and intention to effectively convey information to the public." 45 C.F.R. § 5.54(b)(2)(ii).

Since the COVID-19 pandemic in the United States began, the pace at which the disease has spread and its consequences for individuals, communities, and the healthcare system have received widespread public attention.[9] The United States has seen roughly 600,000 confirmed cases and over 25,000 deaths,[10] but because tests remain limited, the true extent of the COVID-19 outbreak remains uncertain.[11] In New York City, for example, officials have noted that there are over 100 people per day who die at home who are presumed to be virus victims, but who, because they are not tested, are not counted in the COVID-19 death toll. [12] The uncertainty surrounding COVID-19 is particularly significant for low-income and minority communities in affected areas. As the Congressional Black Caucus noted in a recent letter requesting the release of demographic data, "[b]lack and brown communities are more likely to be

---

[8] *See* Mays & Newman, *supra* note 3; Waldstein, *supra* note 5.

[9] *See, e.g.*, *The Coronavirus Outbreak: Latest Updates*, N.Y. Times, https://www.nytimes.com/2020/04/12/world/coronavirus-news.html (last visited Apr. 12, 2020).

[10] *See Coronavirus in the U.S.: Latest Map and Case Count*, *supra* note 1.

[11] Arjun K. Manrai & Kenneth D. Mandl, *Covid-19 Testing: Overcoming Challenges in the Next Phase of the Epidemic*, STAT (Mar. 31, 2020), https://www.statnews.com/2020/03/31/covid-19-overcoming-testing-challenges.

[12] Mays & Newman, *supra* note 3.

lower-income, uninsured, lack access to quality care, and are more prone to chronic health conditions . . . that are serious risk factors for COVID-19" and are "less likely to have the ability to work from home . . . adding to their risk."[13]

Disclosure of demographic data on COVID-19 cases, treatments, and outcomes will thus "significantly contribute to the public understanding" of the COVID-19 pandemic itself and the data that HHS and its components collect as part of this response. 5 U.S.C. § 552(a)(4)(A)(iii); 45 C.F.R. § 5.54(a). Access to the data that HHS collects through the COVID-19 Case Report Forms will allow the public to understand the true extent of COVID-19 morbidity and mortality among minority communities and to better understand their own individual risks. Without access to a full and accurate dataset, individuals are left to rely on the small number of state and local health departments that have chosen to release demographic data, which will likely prevent the public from understanding the true risk that COVID-19 poses to their communities.[14] The release of demographic information related to treatment will also allow the public to assess whether healthcare providers are administering COVID-19 treatment equitably. If the data reveals inequities in cases, treatment, or outcomes, the public will be able to use this data to advocate for change and to work with public health officials to address these inequities. Without robust and transparent demographic data, communities and their representatives will be unable to do so.[15]

The information is not "already in the public domain," under 45 C.F.R. § 5.54(b)(2)(i) because HHS has not yet publicly released the COVID-19 Case Report Forms it has received. While the CDC has released a report on hospitalization data that included demographic data, that preliminary report includes only a subset of COVID-19 cases and does not reflect the continued spread of the virus and the significant increase in COVID-19 cases in April.[16] This data will add something new

---

[13] Letter from Congressional Black Caucus to CDC Director Dr. Robert R. Redfield (Apr. 7, 2020) [hereinafter "CBC Letter"], https://cbc.house.gov/uploadedfiles/cbc-cbc_health_braintrust_racial_disparities_letter_to_cdc.pdf.

[14] Johnson & Buford, *supra* note 4.

[15] *Id.*; CBC Letter, *supra* note 13.

[16] Waldstein, *supra* note 5.

to the public's understanding by providing nationwide demographic data for all recorded COVID-19 cases, significantly expanding the public's understanding of the COVID-19 pandemic beyond what can be gleaned from the limited federal, state, and local data that has been released thus far.

*This Request is Not Primarily in The Times's Commercial Interest*

The disclosure is not primarily in The Times's commercial interest. 45 C.F.R. § 5.54(a). We are a news media requester that can and will "effectively convey information to the public." 45 C.F.R. § 5.54(b)(2)(ii). Because we have demonstrated that the information will shed light on the operations or activities of the government in its response to the COVID-19 pandemic, 45 C.F.R. § 5.54(b)(1), and is not already in the public domain, 45 C.F.R. § 5.54(b)(2)(i), this request is "not primarily in the commercial interest of the requester." 45 C.F.R. § 5.54(b)(3)(ii).

For these reasons, a public interest waiver of fees is appropriate here. We therefore respectfully request that fees related to the search, review, and duplication of requested records be waived.

**Limitation of Fees**

We are also entitled to a limitation of fees because we are a member of the news media. 45 C.F.R. § 5.53(b); 5 U.S.C. § 552(a)(4)(A)(ii)(II). Accordingly, even if our application for a waiver of all fees is denied, we are entitled to a limitation of fees. As a news media requester, we are "entitled to search time, review time, and up to 100 pages of duplication" and can be charged only duplication fees after the first 100 pages or its cost equivalent. 45 C.F.R. § 5.53(b). We request that the information be provided in its native electronic format, and thus there should be no duplication fees.

**Request for Expedited Processing**

We also ask that the information requested be disclosed on an expedited basis. Expedited processing is appropriate here because a "compelling need" exists for disclosure of the requested information. 5 U.S.C. § 552(a)(6)(E)(i)(I). A compelling need exists when, with respect

6

to a request made by a person primarily engaged in disseminating information to the public, there is "an urgent need to inform the public about an actual or alleged Federal Government activity." 45 C.F.R. § 5.27(b)(2).

As a news organization, we are primarily engaged in disseminating information to the public. As the COVID-19 pandemic unfolds, there is an urgent demand to inform the public about the relationship between certain demographic traits or pre-existing conditions and COVID-19 cases, treatment, and outcomes. The information requested thus concerns "a matter of exigency to the American public" and "the consequences of delaying a response would compromise a significant recognized interest." *Bloomberg, L.P. v. United States Food & Drug Admin.*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007) (quoting *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001)).

Demographic and health history data relating to COVID-19 cases, treatment, and outcomes is a matter of exigency to the American public. Prompt disclosure of the data that CDC collects as part of its response to the COVID-19 pandemic is critical in order to permit the public to better understand the risks that COVID-19 poses and to determine whether healthcare providers are providing treatment in an equitable way. This is particularly exigent given the apparently heightened vulnerability of low-income and minority communities, and communities with certain other characteristics such as high smog levels.[17] As some preliminary racial and ethnic demographic has been released, these potential disparate impacts across racial lines are "the subject of an unfolding story." *See Al-Fayed*, 254 F.3d at 310. The importance of demographic data on COVID-19 cases and outcomes has been the subject of multiple stories in outlets including *The New York Times*, *The Atlantic*, *The Hill*, and *ProPublica*.[18] A search of the Lexis Nexis database on April 11, 2020 identified 1,062 stories published on COVID-19 and racial disparities in the first two weeks of April alone.[19]

---

[17] Mays & Newman, *supra* note 3.

[18] *Id.*; Johnson & Buford, *supra* note 4; Kendi, *supra* note 5; Moreno, *supra* note 6.

[19] Lexis Advance Research, Results for: COVID-19 AND race AND demographic*, Lexis Nexis (Apr. 12, 2020).

Further, because this data is critical to helping the public understand the apparent vulnerability of minority and low-income communities to COVID-19, delaying a response would compromise a significant recognized interest, in this case the health of the public. *See Bloomberg, L.P.*, 500 F. Supp. 2d at 377. Without access to the data that HHS collects on race, age, sex, county, preexisting conditions, symptoms, and patient outcomes, however, these communities are unable to assess the extent of this risk for themselves. They are instead left to rely on incomplete and preliminary data, which may not fully reflect the conditions in their own communities. Without the data that CDC has likely collected, the public will "not be able to accurately identify the threat among the most vulnerable populations nor find solutions to address associated health inequities."[20] Accordingly, there is an urgent need to inform the public about CDC's activity, making expedited processing appropriate.

A compelling need also exists where "a failure to obtain requested records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 45 C.F.R. § 5.27(b)(1). Here, a failure to release accurate and transparent demographic data related to COVID-19 cases, treatments, and outcomes would keep certain communities and patient subpopulations in the dark about the true risks that COVID-19 poses to them. Thus individuals without access to this data may reasonably be less likely to take steps necessary to protect themselves and their communities from COVID-19, resulting in potentially severe illness or death. Further, such a failure to release this information would deprive the public of the information they need to see, for example, what treatments are most effective and what pre-existing conditions pose the greatest risk, or to ensure that minority patients are receiving the same treatments as their white counterparts, or that men and women are receiving the same level of care. Failure to provide data that might show inequitable treatment could unduly delay efforts by the public to more effectively advocate for changes to treatment practices that have disparate impacts, which can reasonably be expected to result in severe illness or death for those who live in communities that are at the center of

---

[20] CBC Letter *supra* note 13.

the outbreak in places like New York City.[21] Without this data, public
health officials will also be less able to develop appropriate responses to
these inequities and "inequalities will likely worsen, preventable deaths
will occur, and our efforts to slow the pandemic will fail."[22] Accordingly,
any delay in releasing these records could reasonably be expected to pose
an imminent threat to the life and safety of individuals in the United
States. This compelling need for this data for use by the public and public
health officials to prevent avoidable illness and death makes expedited
processing appropriate here.

**Request for Explanation of Withholdings and Redactions**

If this request is denied in whole or in part, please provide a
reasonable description of  any withheld materials and a justification for all
such withholdings that includes reference to the specific FOIA exemptions
authorizing withholding and specific reasons why such exemptions apply.
45 C.F.R. § 5.31. An agency shall withhold information only if "the
agency reasonably foresees that disclosure would harm an interested
protected by an exemption" or "disclosure is prohibited by law." 5 U.S.C.
§ 552(a)(8)(A)(i). We therefore request that if CDC determines that an
exemption applies that it also provide specific reasons why disclosure
would harm any interest protected by such exemption. An agency shall
also "consider whether partial disclosure of information is possible
whenever the agency determines that a full disclosure of a requested
record is not possible" and "take reasonable steps necessary to segregate
and release nonexempt information." *Id.* 552(a)(8)(A)(ii). We therefore
request that CDC release all segregable portions of otherwise exempt
material.

*** 

Thank you for your prompt attention to this request. If you have
any questions or concerns about what we are seeking, please do not
hesitate to contact us at the email address below. Pursuant to the
applicable FOIA provision and departmental regulations, we expect a

---

[21] Mays & Newman, *supra* note 3; CBC Letter, *supra* note 13.
[22] CBC Letter, *supra* note 13.

response regarding this request within the ten (10) working day time limit set by law. 45 C.F.R. § 5.27(c); 5 U.S.C. § 552(a)(6)(E)(ii)(I).

Sincerely,

/s/ Alexandra Perloff-Giles

Alexandra Perloff-Giles
The New York Times Company
Legal Department
620 8th Avenue
New York, NY 10018
Office: (212) 556-7783
Cell: (415) 713-2069
E-mail: aperloffgiles@nytimes.com

10

CDC 2019-nCoV ID: _____     Form Approved OMB: 0920-1011 Exp. 4/23/2020

..............PATIENT IDENTIFIER INFORMATION IS NOT TRANSMITTED TO CDC ......................

Patient first name _____   Patient last name _____   Date of birth (MM/DD/YYYY): ____/_____/_____

..............PATIENT IDENTIFIER INFORMATION IS NOT TRANSMITTED TO CDC ......................

# Human Infection with 2019 Novel Coronavirus
# Person Under Investigation (PUI) and Case Report Form

Reporting jurisdiction: _____   Case state/local ID: _____
Reporting health department: _____   CDC 2019-nCoV ID: _____
Contact ID [a]: _____   NNDSS loc. rec. ID/Case ID [b]: _____

a.   Only complete if case-patient is a known contact of prior source case-patient. Assign Contact ID using CDC 2019-nCoV ID and sequential contact ID, e.g., Confirmed case CA102034567 has contacts CA102034567 -01 and CA102034567 -02. [b] For NNDSS reporters, use GenV2 or NETSS patient identifier.

## Interviewer information

Name of interviewer: Last _____   First _____
Affiliation/Organization: _____   Telephone _____   Email _____

## Basic information

| | | | |
|---|---|---|---|
| What is the current status of this person?<br>Patient under investigation (PUI)<br>Laboratory-confirmed case<br><br>Report date of PUI to CDC (MM/DD/YYYY):<br>____/_____/_____<br><br>Report date of case to CDC (MM/DD/YYYY):<br>____/_____/_____<br><br>County of residence: _____<br>State of residence: _____ | Ethnicity:<br>Hispanic/Latino<br>Non-Hispanic/<br>Latino<br>Not specified<br><br>Sex:<br>Male<br>Female<br>Unknown<br>Other | Date of first positive specimen collection (MM/DD/YYYY):<br>____/_____/_____<br>Unknown     N/A<br><br>Did the patient develop pneumonia?<br>Yes     Unknown<br>No<br><br>Did the patient have acute respiratory distress syndrome?<br>Yes     Unknown<br>No<br><br>Did the patient have another diagnosis/etiology for their illness?<br>Yes     Unknown<br>No<br><br>Did the patient have an abnormal chest X-ray?<br>Yes     Unknown<br>No | Was the patient hospitalized?<br>Yes     No     Unknown<br><br>If yes, admission date 1<br>____/____/____ (MM/DD/YYYY)<br>If yes, discharge date 1<br>____/____/____ (MM/DD/YYYY)<br><br>Was the patient admitted to an intensive care unit (ICU)?<br>Yes     No     Unknown<br><br>Did the patient receive mechanical ventilation (MV)/intubation?<br>Yes     No     Unknown<br>If yes, total days with MV (days)<br>_____<br><br>Did the patient receive ECMO?<br>Yes     No     Unknown<br><br>Did the patient die as a result of this illness?<br>Yes     No     Unknown |
| Race (check all that apply):<br><br>Asian          American Indian/Alaska Native<br>Black          Native Hawaiian/Other Pacific Islander<br>White          Unknown<br>Other, specify: _____ | | | |
| Date of birth (MM/DD/YYYY): ____/_____/_____<br>Age: _____<br>Age units(yr/mo/day): _____ | | | Date of death (MM/DD/YYYY):<br>____/_____/_____<br>Unknown date of death |
| Symptoms present during course of illness:<br>Symptomatic<br>Asymptomatic<br>Unknown | If symptomatic, onset date (MM/DD/YYYY):<br>____/_____/_____<br>Unknown | If symptomatic, date of symptom resolution (MM/DD/YYYY):<br>____/_____/_____<br>Still symptomatic     Unknown symptom status<br>Symptoms resolved, unknown date | |

Is the patient a health care worker in the United States?     Yes     No     Unknown
Does the patient have a history of being in a healthcare facility (as a patient, worker or visitor) in China?     Yes     No     Unknown
In the 14 days prior to illness onset, did the patient have any of the following exposures (check all that apply):

Travel to Wuhan          Community contact with another          Exposure to a cluster of patients with severe acute lower
Travel to Hubei          lab-confirmed COVID-19 case-patient          respiratory distress of unknown etiology
Travel to mainland China          Any healthcare contact with another          Other, specify: _____
Travel to other non-US country          lab-confirmed COVID-19 case-patient          Unknown
specify: _____          Patient     Visitor     HCW
Household contact with another lab          Animal exposure
confirmed COVID-19 case-patient

If the patient had contact with another COVID-19 case, was this person a U.S. case?     Yes, nCoV ID of source case: _____     No     Unknown     N/A
Under what process was the PUI or case first identified? (check all that apply):     Clinical evaluation leading to PUI determination
Contact tracing of case patient     Routine surveillance     EpiX notification of travelers; if checked, DGMQID _____
Unknown     Other, specify: _____

## Symptoms, clinical course, past medical history and social history

Collected from (check all that apply):     Patient interview     Medical record review

Public reporting burden of this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. Send comments regarding this burden estimate or any other aspect of this collection of information including suggestions for reducing this burden to CDC/ATSDR Reports Clearance Officer; 1600 Clifton Road NE, MS D-74 Atlanta, Georgia 30333; ATTN: PRA (0920-1011).



CDC 2019-nCoV ID: [_____]

Form Approved: OMB: 0920-1011 Exp. 4/23/2020

# Human Infection with 2019 Novel Coronavirus
# Person Under Investigation (PUI) and Case Report Form

| During this illness, did the patient experience any of the following symptoms? | Symptom Present? | | |
|---|---|---|---|
| Fever >100.4F (38C)ᶜ | Yes | No | Unk |
| Subjective fever (felt feverish) | Yes | No | Unk |
| Chills | Yes | No | Unk |
| Muscle aches (myalgia) | Yes | No | Unk |
| Runny nose (rhinorrhea) | Yes | No | Unk |
| Sore throat | Yes | No | Unk |
| Cough (new onset or worsening of chronic cough) | Yes | No | Unk |
| Shortness of breath (dyspnea) | Yes | No | Unk |
| Nausea or vomiting | Yes | No | Unk |
| Headache | Yes | No | Unk |
| Abdominal pain | Yes | No | Unk |
| Diarrhea (≥3 loose/looser than normal stools/24hr period) | Yes | No | Unk |
| Other, specify:_____ | | | |

Pre-existing medical conditions?                                                    Yes      No      Unknown

| Chronic Lung Disease (asthma/emphysema/COPD) | Yes | No | Unknown | |
|---|---|---|---|---|
| Diabetes Mellitus | Yes | No | Unknown | |
| Cardiovascular disease | Yes | No | Unknown | |
| Chronic Renal disease | Yes | No | Unknown | |
| Chronic Liver disease | Yes | No | Unknown | |
| Immunocompromised Condition | Yes | No | Unknown | |
| Neurologic/neurodevelopmental | Yes | No | Unknown | (If YES, specify) _____ |
| Other chronic diseases | Yes | No | Unknown | (If YES, specify) _____ |
| If female, currently pregnant | Yes | No | Unknown | |
| Current smoker | Yes | No | Unknown | |
| Former smoker | Yes | No | Unknown | |

Respiratory Diagnostic Testing

| Test | Pos | Neg | Pend. | Not done |
|---|---|---|---|---|
| Influenza rapid Ag    A   B | | | | |
| Influenza PCR    A   B | | | | |
| RSV | | | | |
| H. metapneumovirus | | | | |
| Parainfluenza (1-4) | | | | |
| Adenovirus | | | | |
| Rhinovirus/enterovirus | | | | |
| Coronavirus (OC43, 229E, HKU1, NL63) | | | | |
| M. pneumoniae | | | | |
| C. pneumoniae | | | | |
| Other, Specify:_____ | | | | |

Specimens for COVID-19 Testing

| Specimen Type | Specimen ID | Date Collected | Sent to CDC | State Lab Tested |
|---|---|---|---|---|
| NP Swab | | | | |
| OP Swab | | | | |
| Sputum | | | | |
| Other, Specify: _____ | | | | |

Additional State/local Specimen IDs: _____   _____   _____   _____   _____

Public reporting burden of this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. Send comments regarding this burden estimate or any other aspect of this collection of information including suggestions for reducing this burden to CDC/ATSDR Reports Clearance Officer; 1600 Clifton Road NE, MS D-74 Atlanta, Georgia 30333; ATTN: PRA (0920-1011).